UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHER THOMPSON, Individually; SHIRLEY TRENT; LINDA IGOE; THERESA MARTIN; CHERYL ADAMS; DONNA HOLZBERGER; PAMELIA MITCHNER; SIMON PARSONS; MARGARET LORRAINE WOLFORD; FAITH MANNO BALSIER; CAROLYN SCHWARTZ; RODNEY JORDAN; SARAH WOODRUFF WATKINS; CAROL SHIELDS; PAMELA KISELA; CAROL REICHERT; SANDRA WOOD; NATASHA ALEXANDERIA POPOVICH; YVETTE MARIE REIDY; JOSE LUIS CALDAS; PATRICIA BIAS; NANCY JOHNSON BLASINGAME; MARY SEARS; JOANN MONDRUS; SCOTT WESSEL; SANDRA KAY BERRY; and on behalf of all others similarly situated, Plaintiffs, v. AMERICAN AIRLINES GROUP, INC., a Delaware Corporation, f/k/a AMR Corporation, and AMERICAN AIRLINES, INC, a Delaware Corporation, Defendants. | Case No. 14 CV 7980  Judge Sharon Johnson Coleman |

## AMENDED COMPLAINT

Plaintiffs CHER THOMPSON; SHIRLEY TRENT; LINDA IGOE; THERESA MARTIN; CHERYL ADAMS; DONNA HOLZBERGER; PAMELIA MITCHNER; SIMON PARSONS; MARGARET LORRAINE WOLFORD; FAITH MANNO BALSIER; CAROLYN SCHWARTZ; RODNEY JORDAN; SARAH WOODRUFF WATKINS; CAROL SHIELDS; PAMELA KISELA; CAROL REICHERT; SANDRA WOOD; NATASHA ALEXANDERIA POPOVICH; YVETTE MARIE REIDY; JOSE LUIS CALDAS; PATRICIA BIAS; NANCY JOHNSON BLASINGAME; MARY SEARS; JOANN MONDRUS; SCOTT WESSEL; SANDRA KAY BERRY and all such individuals similarly situated, (hereinafter collectively "Plaintiffs") by and through their attorneys, Law Office of Robert B. Williams and Nancy Richter of Slavin & Slavin, complaining of Defendants, AMERICAN AIRLINES GROUP, a Delaware Corporation, f/k/a AMR Corporation, (hereinafter "AAG") AMERICAN AIRLINES, INC., a Delaware Corporation (hereinafter "American") and state as follows:

1

## NATURE OF ACTION

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this is a national class action lawsuit brought by Plaintiffs, individually and on behalf of all other similarly situated persons (i.e. the Class Members) who have retired or have otherwise separated from American prior to January 2, 2014 who were granted the identical boarding priority designation denoted as "D2" which they had at the time of the their separation from American and which was made a part of their separation packages, including:

   a. Individuals who retired at the age of 55 years or older and had 10 or more years of company seniority;

   b. Individuals who severed employment with a minimum of five (5) years of occupational seniority whose age plus years of occupational seniority equals forty;

   c. Individuals who accepted travel separation packages for unlimited D2 travel for a certain block of time;

   d. Individuals who left employment under the Special Voluntary Early Out Retirement Packages from 1994-1995; and

   e. Other retired and/or separated employees who were given, in accord with American's corporate policy, the same travel classification that they had immediately prior to leaving their positions.

2. American periodically and regularly provided its employees with documents in which it promised its employees that they would maintain the same boarding priority status attained at the time of the employees' retirement and/or separation from the company for purposes of the grant of specified travel benefits. (Group Exhibit A, Employee Hand Book and Trip Book[1])

---

[1] Because the documents are voluminous, only the relevant portions are attached hereto as Exhibits.

3. At all relevant times the operable corporate policy of American, as communicated to its employees and as implemented in its practices for decades, is that "[A] retiree continues to have the same classification of travel in retirement as the employee had immediately prior to retiring." (See Group Exhibit B, Letters from American Airlines' Vice President of Employee Relations to the Association of Professional Flight Attendants dated March 28, 2008 and December 13, 2011.)

4. American regularly sought volunteers from the ranks of its employees to accept early retirement packages crafted by American and in which it specifically agreed that those employees who accepted the early retirement package would receive certain travel benefits and would not forfeit their travel classification. (See Group Exhibit C, Voluntary Travel Separation Program, 1995 Special Voluntary Early Out Program and The Voluntary Early Out Program[2])

5. Plaintiffs each received written notice from American ("the "Notification Letter") that the benefits to which they are entitled to receive in accord with the terms of their retirement and/or separation agreements and which have been accorded as part of American's longstanding corporate policy, were to be diminished beginning on September 10, 2014. (See Exhibit D, Notification Letter dated September 2, 2014 from American Airlines directed to Class Members.)

6. Beginning on September 10, 2014, Plaintiffs' had their "D2" travel priority designation stripped and were assigned the newly minted designation of "D2R" indicating the Plaintiffs' status as a retired former employee, related to a retiree, or otherwise associated with a retiree for purposes of travel priority.

---

[2] Because the documents are voluminous, only the relevant portions are attached hereto as Exhibits.

7. The stripping of the Plaintiffs' "D2" status was, as noted in the Notification Letter from American, negotiated as part of the 2013 merger of American and US Airways and the formulation of American Airlines Group ("AAG").

8. Representatives of American made numerous public statements reaffirming Plaintiffs that the merger would not alter their travel benefits, including their priority status.

9. The demotion of the retirees and their family and friends is contrary to the repeated statements of American executives that the travel benefits would not be impacted by the merger and Plaintiffs relied on these statements and took no action to interfere with the merger.

10. The travel benefits granted to the Plaintiffs are unique and the stripping of the Plaintiffs' status has severely diminished the benefits.

11. Plaintiffs' loss of the their D2 status and their demotion to D2R status places them in line behind over 500,000 people, including current employees and their spouses, domestic partners, registered companions and eligible children.

12. Since the demotion of the Plaintiffs to D2R status on September 10, 2014, Plaintiffs have been routinely and regularly bumped from flights in favor of current employees and their spouses, domestic partners, registered companions and eligible children.

## THE PARTIES

13. Plaintiff, CHER THOMPSON, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

14. Plaintiff, THERESA MARTIN, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

15. Plaintiff, FAITH MANNO BALSIER, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

16. Plaintiff, MARY SEARS, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

17. Plaintiff, SCOTT WESSEL, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

18. Plaintiff, SANDRA KAY BERRY, is a retired American Airlines flight attendant and a current resident of the State of Illinois.

19. Plaintiff, SHIRLEY TRENT, is a retired American Airlines flight attendant and a current resident of the State of California.

20. Plaintiff, LINDA IGOE, is a retired American Airlines flight attendant and a current resident of the State of Washington.

21. Plaintiff, CHERYL ADAMS, is a retired American Airlines flight attendant and a current resident of the State of California.

22. Plaintiff, DONNA HOLZBERGER, is a retired American Airlines flight attendant and a current resident of the State of Michigan.

23. Plaintiff, PAMELIA MITCHNER, is a retired American Airlines flight attendant and a current resident of the State of California.

24. Plaintiff, SIMON PARSONS, is a retired American Airlines flight attendant and a current resident of the State of Michigan.

25. Plaintiff, MARGARET LORRAINE WOLFORD, is a retired American Airlines flight attendant and a current resident of the State of Georgia.

26. Plaintiff, CAROLYN SCHWARTZ, is a retired American Airlines flight attendant and a current resident of the State of New Jersey.

27. Plaintiff, RODNEY JORDAN, is a retired American Airlines flight attendant and a current resident of the State of Florida.

28. Plaintiff, SARAH WOODRUFF WATKINS, is a retired American Airlines flight attendant and a current resident of the State of California.

29. Plaintiff, CAROL SHIELDS, is a retired American Airlines flight attendant and a current resident of the State of Kentucky.

30. Plaintiff, PAMELA KISELA, is a retired American Airlines flight attendant and a current resident of the State of California.

31. Plaintiff, CAROL REICHERT, is a retired American Airlines flight attendant and a current resident of the State of Florida.

32. Plaintiff, SANDRA WOODS, is a retired American Airlines flight attendant and a current resident of the State of California.

33. Plaintiff, NATASHA ALEXANDERIA POPOVICH, is a retired American Airlines flight attendant and a current resident of the State of California.

34. Plaintiff, YVETTE MARIE REIDY, is a retired American Airlines flight attendant and a current resident of the State of California.

35. Plaintiff, JOSE LUIS CALDAS, is a retired American Airlines flight attendant and a current resident of the State of Florida.

36. Plaintiff, PATRICIA BIAS, is a retired American Airlines flight attendant and a current resident of the State of California.

37. Plaintiff, NANCY JOHNSON BLASINGAME, is a retired American Airlines flight attendant and a current resident of the State of California.

38. Plaintiff, JOANN MONDRUS, is a retired American Airlines flight attendant and a current resident of the State of Arizona.

39. Defendant, AMERICAN AIRLINES, INC. (American) is a Delaware Corporation and was a major U.S. airline and the employer of the Plaintiffs.

40. Defendant AMERICAN AIRLINES GROUP, INC. (AAG) is a Delaware Corporation into which American was merged and AAG conducts its national and international business throughout the United States maintaining a major hub in Chicago, Illinois.

## JURISDICTION AND VENUE

41. The Court has jurisdiction over this matter in accord 28 U.S.C. §1332 due to the complete diversity of citizenship as between the named Plaintiffs on the one hand and the Defendants on the other and because the aggregated amount in controversy exceeds the $75,000 threshold. [3]

## CLASS ACTION ALLEGATIONS

42. The punitive Class comprises of over twenty thousand persons, making joinder of all individuals in a single action impracticable.

43. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class members.

44. A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and Class Members claims and will reduce the potential of repetitious litigation relating to American's stripping of the Class Members' travel benefits.

---

[3] This Amended Complaint comes to be filed in this Court following the granting of Defendant's Motion for Removal from Illinois State Court on the basis of diversity.

45. Plaintiffs' and their counsel have the necessary financial resources to adequately and vigorously litigate this class action and will fairly and adequately represent the interests of Class Members.

46. Class certification, therefore, is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because of the existence of common questions of law and fact and because the expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.

**COUNT I**
**BREACH OF CONTRACT**
**(American Airlines, Inc.)**

47. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39 as paragraph 47 of the Amended Complaint as though fully set forth herein.

48. American, by way of its manuals, trip book, corporate policy, early retirement agreements and travel separation agreements contracted with the Plaintiffs both explicitly and implicitly in offering certain travel benefits, including a designated boarding priority classification.

49. Plaintiffs, by their continued employment, early retirement, separation and retirement accepted the offer made by American for continued travel benefits.

50. Plaintiffs have performed all conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the Agreements, by separating from their employment and forfeiting future income and benefits.

51. The demotion of Plaintiffs to "D2R" status violates the terms of the contracts entered into by the Plaintiffs with American.

52. Defendant's actions have caused harm to the Plaintiffs by significantly diminishing and eliminating the agreed opportunity for travel.

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. Order the reinstatement of Plaintiffs' contractual right to their travel benefits;

B. Award monetary compensation sufficient to compensate the Plaintiffs for their loss of travel benefits to date;

C. Grant such other relief as this Court deems fair and just.

## COUNT II
## PROMISSORY ESTOPPEL
### (American Airlines, Inc.)

53. Plaintiffs reallege and incorporate as though fully set forth herein Paragraphs 1 through 39 as paragraph 53 of the Complaint as though fully set forth herein.

54. American, in its capacity as employer and promisor, regularly represented to its employees that they would be given certain travel benefits and would maintain their designated boarding priority classification if they remained in the employ of American for sufficient time to trigger their retirement benefits.

55. American sought out volunteers to participate in its various early retirement programs and separation packages and promised that those employees agreeing to accept those programs would not forfeit their travel benefits or designated boarding priority classification.

56. American made the promise of conferring the unique offer for travel benefits to the Plaintiffs for purposes of inducing the Plaintiffs to continue and/or to discontinue their employment as it suited American's needs.

57. American knew and expected that the Plaintiffs would rely on the promise of conferring a certain travel status for them which would continue through their retirement and would inure to the benefit of their approved family members.

58. Plaintiffs acted in accord with the promise made by American by continuing their employment through retirement or by discontinuing their employment at an earlier time as requested by American.

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. Order the reinstatement of Plaintiffs' travel benefits, including their D2 status;

B. Award monetary compensation sufficient to compensate the Plaintiffs for their loss of travel benefits to date;

C. Grant such other relief as this Court deems fair and just.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (American Airlines, Inc.)

59. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39 as paragraph 59 of the Amended Complaint as though fully set forth herein.

60. American's statements to the Plaintiffs assuring them of their retention of their D2 status were material facts relating to the Plaintiffs' benefits to be accorded to them for their continued employment, separation and retirement.

61. American's statements were made with the intent to induce the Plaintiffs to continue their employment and/or accept separation or early retirement.

62. American's relationship with the Plaintiffs required good faith and fair dealing and a duty to act fairly in its inducement of the Plaintiffs to continue their employment or to separate and/or retire from their positions.

63. American was uniquely in possession of information relating to the restructuring of the company and its programs and had a duty to ascertain the impact on the Plaintiffs and to disclose that information so as to allow Plaintiffs to make an informed decision.

64. Plaintiffs were justified in relying on the truthfulness of the statements made by American regarding their D2 status as American had not previously stripped employees of their status attained at the time of their separation from American.

65. Plaintiffs' reliance on American's statements caused severe harm and prejudice to the Plaintiffs in that they continued their careers with American rather than seeking other employment; separated from the company earlier than they would have if not for the promise of the travel benefits; and retired earlier than necessary sacrificing income and benefits.

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. Order the reinstatement of Plaintiffs' travel benefits, including their D2 status;

B. Award monetary compensation sufficient to compensate the Plaintiffs for their loss of travel benefits to date;

C. Grant such other relief as this Court deems fair and just.

## COUNT IV
## FRAUDULENT MISREPRESENTATION
**(American Airlines, Inc.)**

66. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39 as paragraph 66 of the Amended Complaint as though fully set forth herein.

67. American's statements to the Plaintiffs assuring them of their retention of their D2 status were material facts relating to the Plaintiffs' benefits to be accorded to them for their continued employment, separation and retirement.

68. American's statements were made with the intent to induce the Plaintiffs to continue their employment and/or accept separation or early retirement.

69. American's relationship with the Plaintiffs required good faith and fair dealing and a duty to act fairly in its inducement of the Plaintiffs to continue their employment or to separate and/or retire from their positions.

70. American was uniquely in a position to have information not otherwise available to the Plaintiffs and willfully and wantonly failed to disclose that information and otherwise hid the facts from the Plaintiffs.

71. American's statements were intentionally phrased in a manner which denied Plaintiffs the ability to make informed decisions regarding continued employment and their acceptance of early retirement packages.

72. American's statements were fraudulent in that it knew, or should have known that it would discontinue the Plaintiffs' travel status when it suited its purpose.

73. American's statements were fraudulent to the extent it defined the travel benefits as "retirement" benefits when it knew or should have known that the Plaintiffs could not retain those benefits in retirement.

74. American's actions constitute fraud as American induced the Plaintiffs to act to its benefit and only after receiving the services and agreements from the Plaintiffs stripped the Plaintiffs of their bargained for travel boarding classification.

75. Plaintiffs were justified in relying on the truthfulness of the statements made by American regarding their D2 status as American had not previously stripped employees of their status attained at the time of their separation from American.

76. Plaintiffs' reliance on American's statements caused severe harm and prejudice to the Plaintiffs in that they continued their careers with American rather than seeking employment with another airline with better benefits; separated from the company earlier than they would have if not for the promise of the travel benefits; and retired earlier than necessary sacrificing income and benefits.

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

    A. Order the reinstatement of Plaintiffs' travel benefits, including their D2 status;

    B. Award monetary compensation sufficient to compensate the Plaintiffs for their loss of travel benefits to date;

    C Award punitive damages and attorneys' fees;

    D. Grant such other relief as this Court deems fair and just.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT
**(American Airlines Group, Inc.)**

78. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 40 as paragraph 78 of the Amended Complaint as though fully set forth herein.

79. American, by way of its manuals, trip books, corporate policy, early retirement agreements and travel separation agreements had a valid and enforceable contract with the Plaintiffs both explicitly and implicitly entitling Plaintiffs to certain travel benefits, including a designated boarding priority classification..

80. AAG was aware of the existence of the valid contractual relationships existing between American and the Plaintiffs.

81. AAG induced American to unjustifiably alter the terms of the contractual benefits due to the Plaintiffs.

82. AAG was successful in inducing American to strip the Plaintiffs of their travel status and designated boarding priority classification.

83. Plaintiffs were stripped of their D2 priority status and have been damaged by the loss of their ability to book flights and to travel.

84. AAG's interference was malicious and vexatious and intended to increase profit at the expense of the Plaintiffs' contractual rights.

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

- A. Award monetary compensation sufficient to compensate the Plaintiffs for their loss of travel benefits resulting from AAG's tortious interference;

- B Award punitive damages and attorneys' fees;

- C. Grant such other relief as this Court deems fair and just.

Dated: November 20, 2014          Respectfully submitted,


/s/ Nancy Richter

Nancy Richter
SLAVIN & SLAVIN
20 S. Clark St, Suite 510
Chicago, Illinois 60603
312/ 782-7848  P
312/ 782-8272  F
nrichter@slavinandslavin.com
*Attorney for Defendants*