IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHER THOMPSON, et al., individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| AMERICAN AIRLINES GROUP, a Delaware corporation, as successor in interest to AMR Group d/b/a AMERICAN AIRLINES, INC., | ) ) ) ) ) |
| Defendant. | ) ) |

Case No. 14 C 7980

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are sixteen retired flight attendants who filed a four-count Second Amended Complaint, alleging breach of contract, promissory estoppel, negligent misrepresentation, and intentional misrepresentation against defendants American Airlines Group, Inc., and American Airlines, Inc., (collectively "American") for altering plaintiffs' boarding priority status for travel benefits. American Airlines moves to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim [101]. For the reasons stated below, this Court grants the motion as to Count III and denies the motion for the remainder of the complaint.

**Background**

The following facts from the Second Amended Complaint are accepted as true for purposes of ruling on the motion to dismiss. Plaintiffs (Cher Thompson, Linda Igoe, Cheryl Adams, Donna Holzberger, Pamela Mitchner, Simon Parsons, Rodney Jordan, Carol Shields, Pamela Kisela, Carol Reichert, Yvette Marie Reidy, Jose Luis Caldas, Nancy Johnson Blasingame, Mary Sears, Joann Mondrus, Scott Wessel) are former American Airlines flight attendants. (Second Amended Complaint, Dkt. 93 at ¶¶1, 14-29). They claim that through its Company Policy, American promised that retirees,

and certain qualifying employees, that left the American would receive the same travel benefits that they had immediately prior to separation from the company. (*Id.* at ¶ 2). The Company Policy stated that, "[A] retiree continues to have the same classification of travel in retirement as the employee had immediately prior to retiring." (*Id.* at ¶ 5; Ex. 3, at 2). Plaintiffs allege that at all relevant times, travel privilege eligibility and policies relating to travel privileges were memorialized in American's TRIP Books and published Regulations. (*Id.* at ¶ 4; Ex. 1-2). Specifically, plaintiffs allege that American promised them boarding priority status of "D2." (*Id.* at ¶ 2).

According to the complaint, American regularly sought volunteers to accept early retirement and separation packages. (*Id.* at ¶ 47). These packages offered employees who accepted early retirement the same travel classifications and benefits that they were entitled to at the time of their retirement. (*Id.* at ¶ 48). Plaintiffs allege that employees accepted these offers and retired early based on American's promises. (*Id.* at ¶ 2).

On September 2, 2014, plaintiffs received a letter from American changing their "D2" status to "D2R". (*Id.* at ¶¶ 9, 12). Individuals with D2 boarding priority are eligible to board before those with D2R status. (*Id.*) This change followed the 2013 merger between American and US Airways. (*Id.* at ¶ 11). Plaintiffs allege that the change in boarding priority status is contrary to many public statements that American representatives made reaffirming that the merger would not affect plaintiffs' travel benefits, including their boarding priority status. (*Id.*) As a result of the change in boarding status that went into effect on September 10, 2014, plaintiffs assert that they have routinely and regularly been bumped from flights and have been unable to travel. (*Id.* at ¶ 13). Plaintiffs allege this is a result of their change in status from D2 to D2R. (*Id.* at ¶ 13).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and

2

draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court considers exhibits attached to a motion to dismiss as part of the pleadings if they are referred to in the complaint and are central to the claims. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Federal Rule of Civil Procedure 10(c) provides that "written instruments" attached to a pleading become part of that pleading for all purposes. Fed.R.Civ.P. 10(c).

**Discussion**

The four-count Second Amended Complaint alleges claims of breach of contract, promissory estoppel, intentional and negligent misrepresentation. The Court will address each claim in turn, beginning with plaintiffs' assertion that American breached a contract with them to provide the same flight priority benefits for life. American argues that plaintiffs fail to even identify the contract at issue.

*1. Count I: Breach of Contract*

In order to state a clam for breach of contract in Illinois, plaintiffs must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by defendants; and (4) resultant damages." *Reger Dev., LLC v. Nat.'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 351 Ill.App.3d 752, 814 N.E.2d 960, 967 (1st Dist., 2004)). At issue here are the first and third elements. Plaintiffs assert that the TRIP Book is a valid and enforceable contract that expressly provides for lifetime travel benefits. American argues that not only does the TRIP Book not constitute a contract, but it expressly allows American to unilaterally modify the terms.

The Court first must determine whether the Second Amended Complaint sufficiently alleges a contract in the form of the TRIP Book. An employee handbook or other policy statement creates enforceable contractual rights when it meets the following factors: "(1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Duldulao v. Saint Mary of Nazareth Hosp. Center,* 115 Ill.2d 482, 505 N.E.2d 314, 318 (Ill. 1987). When the above conditions are present, the employee's work constitutes consideration for the promises contained in the handbook and under traditional principles a valid contract is formed. *Id.*

In *Duldulao*, the plaintiff, a nurse, brought a wrongful discharge action against her employer when she was not given written notice of her termination. *Id.* at 316. The nurse relied on the language in an employee handbook that said she could only be discharged after written notice. *Id.* The nurse argued that the handbook was sufficient to modify the "at-will" nature of her employment. *Id.* at 318. The *Duldulao* court agreed, stating that the above three factors were met and the handbook constituted a valid contract. *Id.*

Here, the first *Duldulao* factor is in dispute and the TRIP Book sufficiently satisfies that element. The Trip Book contains clear enough language that employees and retirees meeting certain eligibility requirements would believe an offer has been made for them to receive specific travel benefits. The TRIP Book states, "If you meet the eligibility requirements for retiree travel, you, your legal spouse or Company-recognized Domestic Partner (DP), and dependent children continue to be eligible for unlimited D2 travel on American Airlines and American Eagle carriers." (Dkt. 93-1, Compl. Ex. 1, at 15.) The TRIP further provides: "Note, the TRIP Book provides that travel privileges, unless otherwise stated, *be for the life of the eligible employee*, retiree or their surviving spouse/Domestic Partner; however subject to American Airlines, Inc. termination or modification of the TRIP Book." *Id.* (Emphasis

4

added).

American argues that this language is not a clear enough promise to constitute an offer because the statement allowing American to terminate or modify the TRIP Book negates the formation of a contract. The handbook in *Duldulao* contained no similar disclaimers to negate the promises made. 505 N.E.2d at 319. Thus, American compares the handbook here to the one in *Doe v. First Nat'l Bank of Chicago,* 865 F.2d 864, 872 (7th Cir. 1989). In *Doe*, the plaintiff employee argued he was wrongfully terminated when his employer did not follow the disciplinary procedure contained in the employee manual. *Id.* The policy manual contained an explicit disclaimer:

> Neither this policy nor any other provision of this policy manual is intended to set forth the terms and conditions of an individual's employment or termination of employment, to constitute a contract of employment, or to confer any additional employment rights. Employment can be terminated at any time and for any reason by either the employee or FCC.

*Id.* at 872. The *Doe* court held that the document was not a contract under the *Duldulao* standard because it disclaimed in unambiguous language any purpose to bind the parties. *Id.*

The TRIP Book at issue here, including the provision that may allow American to modify the terms, differs from *Doe* and the other cases cited by American in an important way. The policy in *Doe* expressly disclaims that the provisions are intended to create a contract. In contrast, the "termination or modification" language in the TRIP Book does not disclaim the actual formation of a contract, but merely allows it to be modified. Therefore, this Court finds that plaintiffs have sufficiently alleged the existence of a contract to meet the first element of their breach of contract claim.

Next, the Court considers whether plaintiffs sufficiently allege a breach of the TRIP Book travel promises. American argues that the TRIP Book contains unambiguous language that allows American to change plaintiffs' travel privileges at any time:

- "Note, the TRIP Book provides that travel privileges, unless otherwise stated, be for the life of the eligible employee, retiree or their surviving spouse/Domestic Partner;

5

however subject to American Airlines, Inc. termination or modification of the TRIP Book." (Compl. Ex. 1, at 5.)

- "As with any policy, the Company reserves the right to terminate, amend or modify these privileges, in any way, if it is in the best interest of the organization or our employees and retirees." (Compl. Ex. 1, at 39–40.)

- "I understand that the Company reserves the right to suspend, revoke or modify these privileges in any way, with or without cause or notice, at any time." (Compl. Ex. 1, at 41.)

- "I am aware that the Company reserves the right to change these privileges, in any way, if the Company seems it is in the best interest of the organization or the employees and retirees." (Compl. Ex. 1, at 41–42.)

- "I further acknowledge and agree that the terms and provisions of AA TRIP Book and other Company Travel Policies may be modified by American at any time and without notice." (Compl. Ex 1, at 43.)

As a general rule, construction of a contract is a question of law. *Local Union 597 v. Mosbeck Indus. Equip. Inc.,* 856 F.2d 837, 840 (7th Cir.1988). "The general rule, however, does not apply where the contract is ambiguous, requiring resolution of factual issues to construe the contract." *Lovellette v. Southern Ry. Co.,* 898 F.2d 1286, 1291 (7th Cir. 1990). "A contract is ambiguous when the parties suggest different, yet reasonable interpretations." *C. States, S.E. and S.W. Areas Pension Fund v. Kroger Co.,* 73 F.3d 727, 732 (7th Cir. 1996).

Under American's construction of the terms, the modification of the TRIP Book cannot support a claim for breach of contract because the contract allows for modification or termination without cause. Plaintiffs argue that the language, "travel privileges, unless otherwise stated, be for the life of the eligible employee, [or] retiree . . ." indicates American's intent to provide retirees with

6

unlimited D2 status for the remainder of their lives. American's interpretation of the disclaimer language makes the TRIP Book ambiguous because it would render the words "for the life" meaningless. In other words, if American can alter the TRIP Book at any time, then the travel privileges would not be granted "for the life." Instead, they would be granted until American chose to revoke them, creating an illusory promise. Because the doctrine of illusory promises says that courts should avoid construing a contract to render promises illusory, this Court should give the words "for the life" meaning. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 936 (2015). Thus, the two phrases ("for the life" and "subject to . . . termination or modification") contradict each other and create an ambiguous provision within the TRIP Book.

Other courts have found similar contracts to be ambiguous. *See e.g., Int'l Ass'n of Machinists & Aero. Workers, Woodworkers Div. v. Masonite Corp.*, 122 F.3d 228, 230 (5th Cir. 1997) (finding the phrase "until death" ambiguous because it could be construed as a limiting or rights granting provision); *Barrett v. Fox & Grove*, No. 01 C 5910, 2002 U.S. Dist. LEXIS 23482, at *11 (N.D. Ill. Dec. 2, 2002) (finding ambiguous a benefit plan that permitted amendment "at any time" despite language Plan that each employee "shall be entitled" to benefits which "shall be paid" when the employee leaves the firm). Moreover, American's construction of the TRIP Book, while reasonable, requires an inference in favor of American and this Court must draw all reasonable inferences in favor of plaintiff for the purposes of the motion to dismiss. Accordingly, this Court finds that plaintiffs have adequately stated a claim for breach of contract.

*2. Count II: Promissory Estoppel*

Next, the Court considers whether plaintiffs state a claim for promissory estoppel, which is an alternative means of obtaining contractual relief under Illinois law. *See Prentice v. UDC Advisory Services, Inc.,* 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146, 150 (1995), citing *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990). "Promissory estoppel makes a promise binding where 'all the other elements of a contract exist, but consideration is

lacking.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (quoting *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). Plaintiffs must allege that (1) American made an unambiguous promise to plaintiffs, (2) plaintiffs relied the promise, (3) plaintiffs' reliance was expected and foreseeable by defendants, and (4) plaintiffs relied on the promise to their detriment. *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 676–77 (7th Cir. 2005); *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill.2d 46, 906 N.E.2d 520, 523–24 (Ill. 2009).

The Second Amended Complaint contains sufficient facts to state a claim for promissory estoppel. As discussed above, plaintiffs have sufficiently stated facts supporting the existence of a contract at this juncture. The complaint also alleges that plaintiffs relied on American's promise of lifetime travel benefits when they took early retirement or separation packages. Further, the complaint alleges that American intended plaintiffs to rely on this promise, or it was at least foreseeable that plaintiffs would rely. In addition to the language in the TRIP Book, plaintiffs present two letters from M. Burdette, American's Vice President of Employee Relations, which are addressed to the Association of Professional Flight Attendants, dated March 28, 2008, and December 13, 2011. Dkt. 93, Ex. 3. Plaintiffs allege that these letters represent assurances from American that their retirement benefits would not change in retirement. Although defendants argue that these letters only referred to American's "current travel policy" and thus the letters are not assurances that the travel policy would not change. This Court must construe all inferences in favor of plaintiffs when deciding a motion to dismiss. Accordingly, plaintiffs sufficiently allege promissory estoppel.

*3. Counts III and IV: Intentional Misrepresentation and Negligent Misrepresentation*

The Court turns to plaintiffs' misrepresentation claims. The Second Amended Complaint asserts both intentional and negligent misrepresentation. To state a claim of intentional misrepresentation, plaintiffs must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such

8

reliance." *Equity Builders and Contractors, Inc. v. Russell,* 406 F.Supp.2d 882, 888 (N.D. Ill. 2005); *Doe v. Dilling*, 888 N.E.2d 24, 35 (Ill. 2008).

Intentional misrepresentation is subject to the heightened pleading standard of Rule 9(b), which requires "a party [to] state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The Seventh Circuit has interpreted Rule 9(b) to require plaintiffs to allege "the who, what, when, where, and how"—in detail. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). "[T]he reference to 'circumstances' in the rule requires the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 771 (7th Cir. 1994).

Here, plaintiffs fail to meet the level of specificity required by Rule 9(b). Plaintiffs allege that American promised plaintiffs that they would receive in retirement D2 travel benefits for life. Plaintiffs further allege that based on American's representations about the early retirement programs and retiree benefits, they cut short their careers. Plaintiffs assert that it is enough for them to have alleged that American made representations "orally and in writing."

To support their contention that they have sufficiently stated a claim for intentional misrepresentation, plaintiffs rely on *Equity Builders & Contractors, Inc. v. Russell,* 406 F.Supp.2d 882 (N.D. Ill. 2005) (Moran, J.). However, their reliance on *Equity Builders* is misplaced. There, the district court found the following allegations "vague" but adequate for Rule 9(b): "In March and April 2004, Ronald R. Russell, Jr. specifically represented both orally and in writing to the Welter Defendants that the Russell Plan represented an original work and did not infringe on any work of the Plaintiff. Furthermore, R. Russell Builders, Inc. itself represented that the Russell Plan is an original work by designating a copyright notice thereon." *Id.* at 889. The allegations here do not come close to this level of specificity. Plaintiffs do not identify who made the representations or when precisely they were made, which fails to satisfy the heightened standard of Rule 9(b). *See Iles v. Swank*, 2005 WL 1300773 at

*5 (N.D. Ill. Mar. 18, 2005) ("[t]he complaint's repeated treatment of all defendants as a whole, without attributing any specific misrepresentations to specific defendants, fails to satisfy the rigors of Rule 9(b).") (citing *Fishman v. Meinen,* 2003 WL 444223 at *6 (N.D.Ill. 2003) and *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990)). This Court therefore finds that Count III for intentional misrepresentation fails to state a claim.

Negligent misrepresentation is not subject to the heightened pleading standards of Rule 9(b). *Tricontinental Industries, Ltd. V. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 833 (7th Cir. 2007). Negligent misrepresentation has the same elements as intentional misrepresentation except that the defendant need not know that the statement is false if he carelessly or negligently fails to ascertain its falsity and a duty on the party making the statement to communicate accurate information. *Id.* at 834. American argues for dismissal of this claim based on the TRIP Book language that American asserts allows it to change the travel benefits and thus negates plaintiffs' claims and demonstrates that reliance on the "for life" provision is not reasonable or justifiable. However, reasonable reliance is usually a question of fact that is not appropriate for resolution on a motion to dismiss unless the undisputed facts lead to only one possible conclusion. *See Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor,* 692 N.E.2d 812, 818 (Ill. App. 1st Dist. 1998). Accordingly, this Court finds plaintiffs have sufficiently alleged negligent misrepresentation.

**Conclusion**

Based on the foregoing, this Court grants American's Motion to Dismiss the Second Amended Complaint [101] on Count III and denies the motion on Counts I, II, and IV. Count III is dismissed without prejudice for failure to state a claim for intentional misrepresentation with sufficient specificity.

IT IS SO ORDERED.

       ENTERED:

Dated: August 16, 2017

                                      SHARON JOHNSON COLEMAN
                                      United States District Judge